UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY DONNELL WARD,

       Petitioner,

v.                                        Case Number 08-12788
                                        Honorable David M. Lawson

BLAINE C. LAFLER,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       The petitioner, Gary Donnell Ward, presently confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel. The petitioner was convicted of assault with intent to commit murder, armed robbery, possession with intent to deliver marijuana, and possession of a firearm during the commission of a felony following a bench trial in the Wayne County, Michigan circuit court in 2004. The trial court sentenced the petitioner to concurrent prison terms of 10-1/2 to 16 years for assault, 3-1/2 to 7 years for armed robbery, one to 4 years for possession with intent to deliver marijuana, and a consecutive two-year term for possession of a firearm during the commission of a felony. The petitioner alleges that he is incarcerated in violation of his constitutional right to counsel and to the effective assistance of counsel. The respondent has filed an answer to the petition asserting that the claim lacks merit. The Court agrees, therefore, the petition will be denied.

I.

       On March 11, 2004, the petitioner arranged a drug transaction between the assault and robbery victim, Marcus Smith, and two unidentified individuals on the corner of Scotten and

Buchanan Streets in Detroit, Michigan.  Smith testified at trial that he went to the intersection with the intent of purchasing five pounds of marijuana for $5,000.  Smith and the petitioner traveled to the intersection in separate vehicles.  Upon arrival at the intersection, the petitioner told Smith to get into a black Chevrolet Suburban that was already at the intersection.  As soon as Smith got in the Suburban, the passenger in the petitioner's vehicle approached the Suburban, opened the door, pointed a gun at Smith's head, and stole Smith's money.  A struggle ensued and as the passenger began pulling the trigger, Smith hit the passenger's hand, and the bullet only grazed the Smith's head.  Smith then took off running, and as he looked back, he saw and heard gun shots from three different locations: the petitioner's vehicle, the inside of the black Suburban, and the outside of the black Suburban where the petitioner's passenger had been standing.

According to the petitioner, Smith went to the intersection with the intention of selling five pounds of marijuana.  The petitioner and Smith traveled to the intersection in separate vehicles.  The petitioner did not have a passenger in his vehicle.  As soon as Smith exited his vehicle and started toward the Suburban, the petitioner pulled up beside Smith, and Smith told the petitioner, "I'm good, I'll get with you tomorrow."  Trial Tr., Sept. 14, 2004 at 10.  Then the petitioner left the intersection and went to the bar.

Smith testified that he made his initial complaint to the police on March 13, 2004.  In that complaint, Smith told the officers that he went to the intersection of Scotten and Buchanan Streets on the evening in question to purchase a Chevrolet Suburban.  This prompted the police to execute a search warrant at the petitioner's residence on March 13, 2004, during which the police found a nine-millimeter semiautomatic handgun, 1,416 grams of marijuana, an electronic scale, some plastic baggies, the petitioner's identification card, and $220 in United States currency in the rear bedroom

-2-

of the residence.  On March 15, 2004, Smith informed the police that his real reason for being at the intersection was to purchase marijuana.

After being arrested and charged with these offenses, the petitioner retained Robert Slameka as his defense attorney.  Slameka represented the petitioner at his preliminary examination through to the close of trial.  On the first day of trial, defense counsel asked the court for a continuance or that he be allowed to withdraw due to the fact that he had not communicated with the petitioner since the pretrial conference.  The petitioner's counsel indicated that he had called the petitioner 15 to 20 times during the pretrial period and was unable to speak with him or leave a message for him.  According to counsel, when he finally reached the petitioner by phone the week before trial, the petitioner refused to meet with counsel at his office.  Counsel stated that because of the lack of communication, "I have no defense, I have no idea what I'm doing whatsoever."  Trial Tr., Sept. 13, 2004 at 4.

The petitioner told the judge that he never called counsel back or met with counsel because counsel insisted that the petitioner bring payment for counsel's legal services to his office and at that time the petitioner did not have any money.  The trial judge did not grant a continuance or allow counsel to withdraw; and he decided to begin trial that morning as scheduled.  In making that decision, the judge stated, "So apparently he's satisfied with the understanding that you have not talked with him.  It appears to me that Mr. Ward understands the process and he's, he's trying to avoid coming to trial, but that is not going to happen.  We're going to go to trial."  Trial Tr., Sept. 13, 2004 at 6.

The petitioner decided to waive his right to a jury trial and opted for a bench trial.  The trial judge stated "[w]ell, we need to execute a waiver form.  I don't want a discussion about it. . . .  If

you want the time to meet I'll give you the time, but we're not going to do this." Trial Tr., Sept. 13, 2004 at 8. The petitioner waived his right to a jury trial. The trial judge discussed the waiver with the petitioner on the record.

At trial, defense counsel waived his opening statement. The prosecution called its only witness, Smith, to testify. Smith testified that he initially told the police that he went to the intersection of Scotten and Buchanan Streets on the night in question to purchase a Suburban but that two days later, he told the police the truth and admitted that he went to the intersection that night to purchase marijuana. Although defense counsel cross-examined Smith, he did not question him about the fact that he had initially lied to the police about his reason for being at the location on the night in question.

Before the prosecution rested, the prosecution and defense stipulated to the items found during the execution of the search warrant at the petitioner's house: the gun, the marijuana, the baggies, the electronic scale, the petitioner's identification card, and the $220. They also stipulated to the chain of custody and the chemist who performed the laboratory tests on the marijuana. Finally, they stipulated that if Lieutenant Morell were to testify, he would testify that he had an opportunity to visually inspect the gun recovered during the execution of the search warrant and that the gun had not been fired recently, but that it could have been cleaned in the two-day period between the alleged shooting and the execution of the search warrant.

On the second day of trial, the defense presented its case. The petitioner was the only witness called by the defense. Defense counsel displayed an inexplicable lack of patience with his client in the courtroom. During the direct examination of the petitioner, the following exchanges occurred between the petitioner and defense counsel:

-4-

MR. SLAMEKA: When you say "these people", what people are you talking about?

THE PETITIONER: The people that did that whatever they did to him that was from Flint, because I wasn't there.  I pulled off after he got in that car.

MR SLAMEKA: See, I asked you a simple question.

THE PETITIONER: Okay.

MR. SLAMEKA: You got to just answer my question, okay?

THE PETITIONER: Okay.

MR. SLAMEKA: Are you with me now?

THE PETITIONER: Yes, sir.

. . .

MR. SLAMEKA: All right.  What happens at that location?

THE PETITIONER: When I got to the location he got out his car and he got in the Suburban.  Before he got in the Suburban he told me "I'm good".

MR. SLAMEKA: Okay, now —

THE PETITIONER: I was on my way to the bar so he said he'll get with me tomorrow and whatever I was, whatever he was gon [sic] give me he'll give it to me tomorrow and I pulled off and I left.

MR. SLAMEKA: You'll allow me to ask you a question, won't you?

THE PETITIONER: Yes, sir.

MR. SLAMEKA: Just for the heck of it?

THE PETITIONER: Okay.  Yes, sir.

. . .

MR. SLAMEKA: Mr. Ward, you're never going to believe this, but in a court there's a question and there's an answer.

THE PETITIONER: Okay.

MR. SLAMEKA: And you respond slowly.

THE PETITIONER: All right.

MR. SLAMEKA: Okay?

THE PETITIONER: Okay.

Trial Tr., Sept. 14, 2004 at 6, 9-10, 13.

On cross-examination, the petitioner candidly admitted to possession of the handgun, marijuana, electronic scale, baggies, and cash.  The petitioner stated, however, that he had owned the gun for eight to nine years and that it had never been fired, but had always remained in the cabinet where the police found it, under lock and key.  The petitioner also stated that the marijuana found by the police was for personal, medical use to address the petitioner's back pain.  The petitioner also testified that the money found by the police belonged to the petitioner's wife.

-5-

In his closing argument, counsel attacked Smith's credibility and the prosecution's lack of evidence. Counsel noted that Smith's medical records made no mention of gunshot residue and the prosecution did not present any concrete evidence tying the gun found at the petitioner's home with the shooting. Counsel also reminded the court that the petitioner testified that the gun had never left his house and that there was a stipulation that the gun did not appear to have been recently fired. Counsel also addressed the possession with intent to deliver marijuana charge in his closing statement by arguing that petitioner did not intend to distribute the marijuana, but instead was using it for medical purposes.

The trial judge convicted the petitioner of the charges noted above and held a sentence hearing on October 28, 2004. The petitioner was represented by Kerry Jackson at sentencing. Mr. Jackson argued for, and the court granted, a stay of execution of the sentence until January 10, 2005 because the petitioner would be moving for a new trial. The petitioner failed to surrender himself to start his sentence on January 10, 2005, and a warrant was issued for his arrest. The petitioner was arraigned on the warrant on June 23, 2005, and he began serving his sentence, which was imposed at the earlier proceeding.

The trial court appointed new counsel on appeal on July 6, 2006, and in November 2006 the petitioner, represented by Valerie R. Newman of the State Appellate Defender's Office, moved for a new trial or, in the alternative, a hearing to develop a record in support of the argument that he was denied the effective assistance of trial counsel, which is known in state law parlance as a *Ginther* hearing. *See People v. Ginther*, 390 Mich. 436, 443, 212 N.W. 2d 922 (1973).

At the *Ginther* hearing, attorney Slameka recounted his lack of communication with the petitioner. He testified that he had insisted that the petitioner come to his office to discuss the case,

-6-

regardless of whether the petitioner had money to pay him, but the petitioner never came.  Slameka

also testified that he contacted the petitioner's significant other and asked her to have the petitioner

call him, but to no avail.  Slameka testified that he received discovery from the prosecutor, reviewed

the preliminary examination transcripts, and spoke to a police officer regarding the case between

the preliminary examination and the trial.  Slameka also testified that even though he had told the

trial judge that he was unprepared to try the case, his 38 years of trial experience enabled him to try

the case without input from the petitioner.  Slameka further testified that he stipulated to the items

found at the petitioner's residence during the execution of the search warrant because the main issue

in the case was the shooting, not the marijuana.  The petitioner did not testify at the *Ginther* hearing.

The court denied the petitioner's motion for a new trial.

After the *Ginther* hearing, the petitioner pursued a direct appeal in the Michigan appellate

courts, raising the same claims that he has raised in his habeas petition.  The petitioner's conviction

was affirmed on appeal.  *People v. Ward*, No. 271641, 2007 WL 2559541 (Mich. Ct. App. Sept. 6,

2007); *leave den.* 480 Mich. 1060, 743 N.W.2d 913 (2008) (Kelly. J., would grant leave to appeal).

The petitioner now seeks a writ of habeas corpus on the following claims:

I.      Trial counsel rendered presumptively ineffective assistance under *United States v. Cronic*, denying the petitioner his Sixth Amendment right to effective assistance of counsel.

II.     Trial counsel rendered ineffective assistance under *Strickland v. Washington*, denying the petitioner his Sixth Amendment right to effective assistance of counsel.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the

standard of review federal courts must apply when considering an application for a writ of habeas

-7-

corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

-8-

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal

quotation marks and citations omitted)); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

## A.

The petitioner initially argues that he is entitled to habeas relief under *United States v. Cronic*, 466 U.S. 648 (1984), because trial counsel rendered presumptively ineffective assistance, denying the petitioner his Sixth Amendment right to the effective assistance of counsel, and therefore prejudice need not be shown.

The Michigan Court of Appeals denied relief on this claim, finding nothing in the record that amounted to a constructive denial of counsel under *Cronic*:

> Defendant emphasizes that, when moving to withdraw or for a continuance, defense counsel reported that he been only superficially in touch with defendant since the final conference three months earlier, and stated, "I have had no communication with him. I have no defense. I have no idea what I'm doing whatsoever." These remarks, considered in isolation and taken at face value, seem to suggest that proceeding to trial meant wholly depriving defendant of the benefit of assistance of counsel, a structural constitutional deficiency demanding reversal. See *Cronic*, [466 U.S.] at 658-659.  But, viewed in context, it is apparent that defense counsel came to court with an operable grasp of the case, and only resorted to such emphatic language to emphasize his frustration over defendant's having failed to make himself available for its preparation.
>
> Defense counsel complained that in 15 or 20 attempts he was unable to reach defendant by telephone until just days before trial, at which time defendant refused to appear at counsel's office.  Counsel further reported that defendant's "attitude toward me is totally negative," and that defendant "does not and will not cooperate."

We point out that defense counsel was retained, not appointed, and that defendant never indicated he wished to fire him, or otherwise arrange for substitute counsel, up to and continuing through trial. Counsel had appeared on defendant's behalf at the arraignment, preliminary examination, and the final conference, and apparently had succeeded in having defendant await trial at large on bail.

In denying the motion to withdraw, the trial court stated, "apparently he's satisfied with whatever representation you can give him with the understanding that you have not talked with him. It appears to me that [defendant] understands the process and he's . . . trying to avoid coming to trial but that is not going to happen." The trial court was within its rights in refusing to allow defendant to gain the benefit of his own intransigence. We are loathe to grant appellate relief over an irregularity for which the appellant was initially responsible. See *People v. Baines*, 68 Mich App 385, 388-389; 242 NW2d 784 (1976).

Defendant's protestation that counsel contacted him only to pressure him for more money seems a dubious attempt to avoid responsibility for the lack of communication. It strains at credulity to suggest that, even on the eve of trial, counsel would demand that defendant bring money to his office while making clear that nothing else in furtherance of the representation was in the offing. For these reasons, we conclude that the trial court did not abuse its discretion in holding defendant responsible for the lack of communication between himself and counsel, and for insisting that defendant proceed to trial, either with counsel or as his own attorney.

*People v. Ward*, No. 271641, 2007 WL 2559541 at *2 (Mich. Ct. App. Sept. 6, 2007).

In *Cronic*, the Supreme Court recognized three situations in which Sixth Amendment violations are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. The first situation occurs when the accused "is denied counsel at a critical stage of his trial." *Id*. at 659. The second situation occurs when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Ibid*. However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, the attorney's failure "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002). The third situation occurs under circumstances "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective

-11-

assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-60. The Court noted that "every refusal to postpone a criminal trial" where counsel has not had an adequate opportunity to prepare "will not give rise to . . . a presumption" of prejudice. *Id.* at 661.

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), identified another type of ineffective assistance of counsel claim that warranted a "similar, though more limited, presumption of prejudice," namely, cases involving an actual conflict of interest that adversely affects counsel's performance. *Strickland*, 466 U.S. at 692 (referencing *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980) (holding that to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who fails to object at trial must demonstrate an actual conflict of interest that adversely affected his attorney's performance)).

"The question whether the petitioner was deprived of his right to effective assistance of counsel is a mixed question of law and fact." *Mitchell v. Mason*, 325 F. 3d 732, 738 (6th Cir. 2003) (citing *Olden v. United States,* 224 F.3d 561, 565 (6th Cir. 2000)). In a habeas case, courts in this circuit apply the "unreasonable application" prong of § 2254(d)(1) to a mixed question of law and fact. *Ibid.* (citing *Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997)).

The petitioner asserts that all four of these situations occurred in his case, and therefore that his trial counsel was presumptively ineffective.

### 1.

First, the petitioner alleges that he was constructively denied counsel during a critical stage of his trial because he had no communication with his defense attorney between the preliminary

examination and the day of trial and because trial counsel failed in his duty to prepare for trial. The petitioner argues that for Sixth Amendment purposes, it does not matter whether that failure can be attributed to some fault of the petitioner. The respondent, in its answer, contends that presumed prejudice is not appropriate under *Cronic* because the lack of communication during the critical pretrial stage was fully attributable to the petitioner. As the Supreme Court recognized in *Powell v. Alabama*, 287 U.S. 45, 60 (1932), the pretrial stage is a critical period in the course of a prosecution against a defendant. Nevertheless, the Court finds that the petitioner's claim on that issue has no merit.

It is not clear that counsel's failure to communicate with the petitioner between the preliminary examination and the trial qualifies as a complete denial of counsel under the *Cronic* standard. Attorney Slameka testified that he had prepared for trial in other ways. The petitioner relies on *Mitchell v. Mason*, 325 F. 3d 732 (6th Cir. 2003), and *Hunt v. Mitchell*, 261 F.3d 575, 582-83 (6th Cir. 2001), to support his argument that the lack of communication between the petitioner and his trial counsel constitutes a constructive denial of counsel. Unfortunately for the petitioner, those cases are distinguishable from the case at hand. In *Mitchell*, the Sixth Circuit held that the *Cronic* presumption of prejudice applied because during the entire course of defense counsel's seven month representation, he met with the petitioner for a total of only six minutes. Moreover, in the month before trial, counsel had been suspended from the practice of law and, therefore, did not appear at motion hearings or do any other work on the case. *Mitchell*, 325 F. 3d at 746-48. In *Hunt*, the court held that a presumption of prejudice was appropriate where the court appointed an attorney for the defendant and commenced the trial the next day. *Hunt*, 261 F.3d at 579, 583.

-13-

Attorney Slameka's pretrial preparation is far from exemplary. But unlike the circumstances in *Mitchell*, Slameka did something to prepare for trial, and there is no evidence that he was suspended from the practice of law at any point during his representation of the petitioner. Nor does this case track the facts in *Hunt*, where defense counsel was appointed the day before trial began. Here, Slameka was retained by, and met with, the petitioner before the preliminary examination. Slameka also represented the petitioner at his preliminary examination and pretrial conference. The petitioner does not allege that counsel failed to meet with him at all, only that counsel failed to meet with him between the pretrial conference and trial, and part of the fault for that may be attributable to the petitioner. Further, in *Mitchell*, the petitioner had repeatedly asked the court for new counsel because his current lawyer refused to meet with him. Here, the petitioner gave no indication that he wanted a different lawyer, nor did he alert the court to his lawyer's failure to meet with him before the commencement of trial. Finally, it appears in this case, unlike in *Hunt* or *Mitchell*, that although Slameka did not communicate with the petitioner between the preliminary examination and trial, he made at least some attempt to prepare for the petitioner's trial. Slameka testified that he had received discovery from the prosecutor, reviewed the preliminary examination transcript, and spoke to a police officer regarding the case between the preliminary examination and the trial.

The *Mitchell* court also distinguished the Sixth Circuit's prior decision in *Dick v. Scroggy*, 882 F.2d 192 (6th Cir. 1989), in which the court found no abridgment of the right to effective counsel. *See Mitchell*, 325 F.3d at 744. In *Dick*, the Sixth Circuit applied the *Strickland* test to a claim based on defense counsel's failure to consult with the habeas petitioner at all except for a 30-to-45 minute meeting the day before trial. *See Dick*, 882 F.2d at 197. *Mitchell*'s facts are unique.

-14-

It is a rare case in which a *Cronic* violation will be found for want of adequate pretrial preparation. *See Johnson v. Bradshaw*, 205 F. App'x 426, 432-33 (6th Cir. 2007).

The Michigan Court of Appeals's determination is not an unreasonable application of Supreme Court law to the facts of the petitioner's case. It is undisputed that counsel did not meet with the petitioner between the pretrial conference and trial. But the reasons for this lack of communication are disputed. Slameka testified that he had called the petitioner between 15 and 20 times during the pretrial period and was unable to speak with him or leave him a message. Slameka stated that he contacted the petitioner's significant other and asked her to have the petitioner call him. When Slameka reached the petitioner by phone the week before trial, the petitioner refused to meet with Slameka at his office. The petitioner asserts that he did not call Slameka back or meet with him because Slameka insisted that the petitioner bring money to pay his legal fees to his office and at that time the petitioner did not have any money.

In resolving that dispute, both the trial court and the court of appeals found counsel to be more credible and held that the lack of communication was attributable to the petitioner. *Ward*, 2007 WL 2559541, at *2. Reassessing the credibility of the witnesses is beyond the purview of a habeas court. *McQueen v. Scroggy*, 99 F.3d 1302, 1317 (6th Cir. 1996), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004) (citing *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983)). This Court therefore must defer to the state trial court's credibility determination of the allocation of fault for counsel's failure to communicate with the petitioner. *See Nelson v. Thieret*, 793 F.2d 146, 148 (7th Cir. 1986); *McQueen*, 99 F.3d at 1317. Where the petitioner's lawyer attempted to contact the petitioner 15 to 20 times prior to trial, left a message for the petitioner with the petitioner's significant other, and contacted the petitioner a week before trial

-15-

requesting a meeting with the petitioner, it cannot be said that the petitioner was "denied counsel" within *Cronic*'s meaning.  *Cronic*, 446 U.S. at 659.

It is true that, as the petitioner suggests, counsel might, and perhaps should have, taken further steps to contact the petitioner or to disqualify himself when he was unable to contact the petitioner.  However, this Court cannot conclude that the state court's resolution of the issue was an unreasonable application of clearly established Supreme Court precedent.  Since the lack of communication between counsel and petitioner during the pretrial period was found to have been attributable to the petitioner, the Court cannot indulge a presumption of prejudice based on a constructive denial of counsel during the pretrial stage of the proceedings.

2.

Second, the petitioner asserts that prejudice should be presumed because counsel entirely failed to subject the prosecution's case to meaningful adversarial testing.  Under such circumstances, federal courts have found a constructive denial of counsel, and a defendant is excused from showing prejudice.  *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002) (quoting *Cronic*, 466 U.S. at 659).  But for this principle to apply, the attorney's failure to test the prosecutor's case "must be complete."  *Bell*, 535 at 697.

The Michigan Court of Appeals denied the petitioner relief on this claim, explaining:

Defendant asserts that counsel failed to subject the prosecution's case to meaningful adversarial testing. See *Cronic*, [466 U.S.] at 656-657.  But defendant specifies no situation where defense counsel overlooked some advantage that might have been gained through more rigorous cross-examination.  Defendant's cursory assertion merits no further consideration.  See *People v. Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000); *People v. Jones (On Rehearing )*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993).

*Ward*, 2007 WL 2559541,  at *3.

-16-

The Michigan Court of Appeals's decision is neither contrary to nor an unreasonable application of clearly established federal law. Not only did counsel represent the petitioner at the preliminary examination and the pretrial conference, but counsel actively represented the petitioner at trial. For example, counsel made several objections during the trial, which were sustained. Trial Tr., Sept. 13, 2004, at 32, 34, 35, 36, 37. Counsel also pursued a defense and called the petitioner as a witness. Trial Tr., Sept. 14, 2004, at 6-14. Finally, counsel made a closing argument in which he challenged both the victim's credibility and the lack of physical evidence in the case. *Id.* at 29-33.

The *Cronic* presumption "applies only where defense counsel *completely* or *entirely* fails to oppose the prosecution throughout the guilt or penalty phase *as a whole*." *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (emphasis in original) (citing *Bell*, 535 U.S. at 697). In the present case, counsel's alleged failures do not amount to a complete failure to provide a defense. The presumption of prejudice, therefore, does not apply, and the petitioner is required to show that he was actually prejudiced by counsel's alleged omissions to obtain habeas relief. *Ibid.*

3.

Third, the petitioner contends that he is entitled to a presumption of prejudice because under the circumstances of the trial, it was highly unlikely that even a fully competent lawyer could have provided effective assistance of counsel. The petitioner argues that given the fact-driven nature of the case against the petitioner, a thorough-going investigation was necessary for counsel to be prepared adequately for trial.

The Michigan Court of Appeals declined to grant relief on the basis that counsel did not sufficiently investigate the petitioner's case:

-17-

Defendant also complains that counsel did not investigate his case well enough.  *See People v. Kimble*, 109 Mich. App. 659, 663; 311 NW2d 446 (1981).  But defendant does not specify what counsel might have discovered in the way of witnesses, evidence, or theories of defense, from more aggressive investigation that would have benefitted the defense.  We decline to speculate on how further investigation might have improved the defendant's position.

At the *Ginther* hearing, trial counsel boasted of his 38 years' experience as an attorney.  When asked if he had conducted any investigation in the case, counsel answered in the affirmative, elaborating, "[t]alked to my client once or twice.  Probably more so by phone because he refused to come to the office.  Held a preliminary exam.  Got the discovery.  As best I could, prepared to [sic] trial without a client."

*Ward*, 2007 WL 2559541,  at *4.

It is appropriate to presume prejudice without inquiry into actual performance where the likelihood is small that any lawyer — even one who is fully competent — could provide effective assistance to the accused.  *Cronic*, 466 at 659-60.  The *Cronic* Court cites, and the petitioner relies upon, *Powell v. Alabama*, 287 U.S. 45 (1932).  In *Powell*, the Court held that the defendants were denied their Sixth Amendment right to counsel because the trial judge appointed "all the members of the bar for the purpose of arraigning the defendants" and then, anticipating that the bar would also provide counsel during trial, appointed as trial counsel an attorney who indicated merely that interested parties had spoken to him about the case.  *Powell*, 287 U.S. at 53-56.  In reaching its conclusion, the Court reasoned that "such designation of counsel as was attempted was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard."  *Id.* at 53.

The petitioner also relies again on *Hunt* to support his argument that prejudice should be presumed because no fully competent lawyer could have rendered effective assistance under these circumstances.  But as noted above, in *Hunt*, the court appointed an attorney for the defendant and

-18-

forced him to try the case the next day.  The Sixth Circuit held that a presumption of prejudice was appropriate because there was only a small chance that any lawyer could provide the defendant with effective assistance because it was a fact-intensive case, and the defense counsel's lack of time to prepare the case for trial was particularly prejudicial.  *Hunt,* 261 F. 3d at 584-85.

The petitioner's case is distinguishable from both *Powell* and *Hunt*.  In each of those cases, defense counsel was appointed on the same day of trial and did not have any time to discuss the case with his client or to investigate the case and prepare a defense.  Here, the petitioner's attorney was retained by the petitioner long before the trial started.  Counsel represented the petitioner at the preliminary examination and pretrial conference.  Counsel also received discovery from the prosecutor, reviewed the preliminary examination transcripts, and spoke to a police officer regarding the case between the preliminary examination and the trial.

Although the state court did not squarely address this aspect of *Cronic*, the court did find that counsel had conducted some investigation into the petitioner's case and noted counsel's many years experience as a criminal defense attorney.  Because this case is distinguishable from cases in which it has been determined that no fully competent lawyer could have rendered effective assistance under the circumstances, the Court cannot conclude that the state court's decision was an unreasonable application of clearly established federal law.

4.

Fourth, the petitioner alleges that this case involves an actual conflict of interest because counsel's own personal interests conflicted with his representation of the petitioner.  The petitioner reasons that counsel was motivated by a desire to protect himself by proving to the court that his failure to prepare for trial was not his fault, but the petitioner's fault.  The petitioner contends that

resulted in counsel exhibiting hostility toward his own client, and therefore this Court should presume that he was prejudiced as a result.

"Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980) (holding that to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who fails to object at trial must demonstrate an actual conflict of interest that adversely affected his attorney's performance) (footnote omitted)).

The rule that proof of prejudice is excused when the lawyer is burdened by a conflict of interest has been limited to cases where the conflict arises from multiple representation. *See Mickens v. Taylor,* 535 U.S. 162, 167-69 (2002). In *Mickens*, the Court refused to extend the rule beyond that factual circumstance, stating that although the *Sullivan* rule had been applied "unblinkingly" to various kinds of conflicts of interest that did not involve multiple representation, *Sullivan* "does not clearly establish, or indeed even support, such expansive application." *Id.* at 174-75. The Court reasoned that *Sullivan* and *Holloway v. Arkansas,* 435 U.S. 475 (1978), "stressed the high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Ibid.* However, the Court believed that "[n]ot all attorney conflicts present comparable difficulties" and concluded that it remained an "open question" whether *Sullivan* should be extended to cases other than multiple representation. *Id.* at 175-76.

After *Mickens,* the Sixth Circuit has been reluctant to apply the *Sullivan* rule to conflicts of interest that do not arise from multiple representation. In *Smith v. Hofbauer,* 312 F.3d 809, 817 (6th Cir. 2002), the court held that a habeas petitioner was not relieved of the requirement of showing

-20-

prejudice under *Sullivan* for an ineffective assistance of counsel claim based a conflict of interest that arose from other than multiple representation.  Other cases have come to the same conclusion. *See Harrison v. Motley,* 478 F.3d 750, 756-57 (6th Cir. 2007) (holding that neither *Sullivan* nor *Holloway* applied to the petitioner's claim that his lawyers had a conflict of interest in representing him based on their fears of criminal prosecution and malpractice for witness tampering); *Stewart v. Wolfenbarger,* 468 F.3d 338, 351 (6th Cir. 2006) ("This Court has consistently held that, for Section 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies."); *Whiting v. Burt,* 395 F.3d 602, 619 (6th Cir. 2005) (finding the presumed prejudice standard inapplicable to an attorney's alleged conflict from representing the petitioner at trial and on appeal); *Moss v. United States*, 323 F.3d 445, 473 n. 25 (6th Cir. 2003) ("As we have discussed, *supra,* the *Mickens* rationale compels our strong hesitation to apply *Sullivan* to conflicts of interest cases arising outside of the joint representation context.").  In this case, expanding the presumed prejudice standard of *Cuyler v. Sullivan* "beyond its present borders of multiple concurrent representation would result in the creation of a new rule of law — one that clearly has not been dictated by prior Supreme Court precedent."  *Whiting,* 395 F.3d at 619.

In the present case, the petitioner's conflict of interest does not result from multiple concurrent representation of joint defendants at the same trial.  The presumed prejudice rule of *Cuyler v. Sullivan* is inapplicable to the petitioner's conflict of interest claim.  Instead, the proper standard is the *Strickland* standard, in which the petitioner must demonstrate that he was actually prejudiced by counsel's alleged conflict of interest.

B.

The petitioner contends that even if he is not entitled to a presumption of prejudice under *Cronic*, he is entitled to habeas relief because trial counsel rendered ineffective assistance, denying the petitioner his Sixth Amendment right to the effective assistance of counsel. The petitioner claims that counsel was ineffective for the following reasons: (1) counsel failed to communicate with the petitioner between the pretrial conference and the trial date, (2) counsel failed to investigate and adequately prepare for trial, (3) counsel failed to consult with the petitioner to discuss whether he should waive his right to a jury trial, (4) counsel waived the defense's opening statement, (5) counsel stipulated to facts that formed the basis of two charges, (6) counsel failed adequately to cross-examine the victim, and (7) counsel attacked the petitioner's credibility during trial.

The governing decision, of course, is *Strickland*, in which the Supreme Court established a two-pronged test for determining if a criminal defendant was deprived of the effective assistance of counsel guaranteed by the Sixth Amendment. First, the petitioner must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A habeas petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. Second, the petitioner must show that counsel's deficient performance prejudiced him. Prejudice is established by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687. He must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

-22-

On habeas review, deference to the state courts' conclusions is required: "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance,* 556 U.S. 111, ---, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Additionally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

The petitioner first asserts that counsel was ineffective because he failed to communicate with the petitioner between the pretrial conference and the trial date. As discussed above, both the trial court and the Michigan Court of Appeals found counsel to be more credible and held that the lack of communication was attributable to the petitioner. That decision was not an objectively unreasonable application of the *Strickland* standard. Because counsel was not responsible for the lack of communication between himself and the petitioner during the pretrial period, the court's determination that counsel was not deficient in failing to communicate with the petitioner was not objectively unreasonable. The petitioner also has not shown he was prejudiced by counsel's failure to consult with him prior to trial. *See Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003) (trial attorneys' alleged failure to consult with defendant did not prejudice defendant in capital murder case, and thus could not amount to ineffective assistance, although attorneys allegedly met with defendant for less than one hour in preparing defense, where defendant failed to show how additional consultation with his attorneys could have altered outcome of trial).

Second, the petitioner contends that he received ineffective assistance because counsel failed to investigate and prepare adequately for trial. The petitioner does not develop that claim beyond

stating it in conclusory language. The petitioner does not specify what his counsel failed to investigate or how it would have made a difference. Conclusory allegations without evidentiary support do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Furthermore, a habeas petitioner's conclusory allegation that his attorney failed adequately to present a defense, without specifying what more his attorney could have done to strengthen his defense, is insufficient to establish ineffective assistance of counsel. *See Campbell v. Grayson*, 207 F. Supp. 2d 589, 598 (E.D. Mich. 2002). The petitioner has not suggested that there were additional witnesses that counsel should have interviewed during his investigation or what evidence, if any, counsel would have found upon further investigation that could have made a difference in the outcome of the trial. Therefore, the petitioner has not shown that counsel was ineffective by failing to investigate.

Third, the petitioner asserts that counsel was ineffective because he failed to consult with the petitioner on the jury trial waiver question. The Michigan Court of Appeals rejected that claim because the petitioner "did not take advantage of the trial court's offer to allow him and counsel a private conference, or otherwise express any need for legal advice beyond what the trial court spelled out in accepting his waiver." *Ward*, 2007 WL 2559541, at *3.

The record in the trial court is, at best, mixed on this issue. When discussing whether the petitioner would waive his right to a jury trial, the judge stated "[w]ell, we need to execute a waiver form. I don't want a discussion about it. . . . If you want the time to meet I'll give you the time, but we're not going to do this." Trial Tr., Sept. 13, 2004, at 8. Attorney Slameka responded "Judge, I respect that, sir, and I apologize to you. I don't want to continue this discussion." *Ibid.* One might argue that it was the petitioner's decision whether to accept the trial judge's equivocal offer of the

-24-

opportunity to consult with his attorney, rather than counsel's decision whether he wanted to "continue the discussion." However, the trial court did engage in a colloquy with the petitioner to ensure that the waiver was knowing, intelligent, and voluntary. Because the petitioner was given at least some chance to consult with counsel, and his waiver appears to have been informed and voluntary, the Court cannot conclude that the state court's determination that counsel's performance was not deficient was contrary to or an unreasonable application of Supreme Court precedent.

Fourth, the petitioner argues that he received ineffective assistance because attorney Slameka waived the defense's opening statement. "A trial counsel's failure to make an opening statement, however, does not automatically establish the ineffective assistance of counsel." *Moss*, 286 F.3d at 863 (citations omitted). In fact, "'[t]he timing of an opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel.'" *Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002) (quoting *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 457 (9th Cir. 1985)).

The petitioner has failed to show that counsel's decision to waive the opening statement was not a strategic decision. Moreover, even if the decision was not a strategic one, the petitioner has not shown a reasonable probability that the trial would have resulted in a different outcome had counsel made an opening statement, particularly in light of the fact that this was a bench trial. Therefore, the petitioner has failed to show that his counsel was ineffective by failing to make an opening statement.

Fifth, the petitioner asserts that counsel was ineffective because he stipulated to facts that formed the basis of two charges. Counsel stipulated that during the execution of a search warrant

-25-

at the petitioner's residence, police found a nine-millimeter gun, 1,416 grams of marijuana, an electronic scale, some empty baggies, and some cash in the petitioner's bedroom. Counsel also stipulated to the chain of custody of these items, as well as the chemist's report on the marijuana. This evidence formed the basis of the possession with intent to deliver marijuana and felony firearm charges.

Counsel's decision to stipulate to the marijuana and the gun in the petitioner's bedroom must be relegated to the category of trial strategy. "In order to avoid second-guessing trial counsel's strategic decisions, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Moss*, 286 F.3d at 859 (quoting *Strickland*, 466 U.S. at 689). The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Campbell v. Coyle*, 260 F.3d 531, 551 (6th Cir. 2001) ("[A]n ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken.").

At the *Ginther* hearing, Slameka testified that the main issue was the shooting, not the marijuana. He may have decided reasonably to stipulate to the facts surrounding the lesser charges in order to concentrate on the defense surrounding the assault with intent to commit murder and armed robbery charges. The petitioner has failed to rebut the presumption that counsel's action was the result of sound trial strategy.

Furthermore, the petitioner is unable to show that there is a reasonable probability that if counsel had not stipulated to the gun and the drugs, the result of the proceeding would have been different. The petitioner candidly admitted to the possession of the gun, marijuana, scale, baggies,

and cash during cross-examination. The prosecution was apparently prepared to present testimony from police officers who committed the search and found these items. The petitioner has not offered a reasonable argument as to how that evidence would have been inadmissible at trial or how it might have been challenged. Indeed, counsel did attempt to mitigate the effect of those admissions by soliciting testimony from the petitioner that the marijuana was for personal use rather than distribution. The petitioner was not prejudiced by defense counsel's decision to stipulate to the admission of this evidence, particularly since that same evidence would have been introduced eventually through a more lengthy process without stipulations from counsel. *See Burke v. United States,* 261 F. Supp. 2d 854, 862 (E.D. Mich. 2003).

The claim that counsel conceded guilt on those charges and therefore his performance was defective is without merit. At trial, prosecution and defense counsel stipulated that if Lieutenant Morell were to testify, he would say that the gun recovered from the petitioner's house did not appear to have been recently fired, although it could have been cleaned in the two-day period between the shooting and when the search warrant was executed. In his closing argument, counsel reminded the court that the  petitioner asserted that the gun had never left the petitioner's house. Counsel also argued that the petitioner was not guilty of possession with intent to deliver marijuana because he did not intend to distribute the marijuana, but instead was using it for medical purposes. There is no evidence that counsel conceded the petitioner's guilt as to the possession with intent to distribute. In fact, counsel's performance suggests otherwise.

In all events, defense counsel's concession that his client is guilty of a lesser included offense can be a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing, so as to amount

to the denial of counsel.  *See Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004). The Supreme Court has held that a defense counsel's failure to obtain a criminal defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial does not automatically render counsel's performance deficient.  *Florida v. Nixon,* 543 U.S. 175, 189 (2004).  This Court finds that the petitioner has not overcome the presumption that defense counsel's decisions were strategic ones, nor has the petitioner shown that they amounted to defective performance.

Sixth, the petitioner contends that he received ineffective assistance because attorney Slameka failed to cross-examine the complainant about the conflicting information he gave the police.  This claim lacks merit because the prosecution elicited testimony from the complainant on direct examination regarding his lack of truthfulness with the police.  The complainant testified that he initially told police that he was at the scene of the crime to purchase a Chevrolet Suburban.  The complainant further testified that two days later he told the police that his real reason for being there was to purchase marijuana.  A defendant does not suffer prejudice when the factfinder hears on direct examination the evidence defendant feels counsel should have developed in cross-examination.  *See Ross v. United States,* 339 F.3d 483, 495 (6th Cir. 2003) (citing *Dorsey v. Parke*, 872 F.2d 163,166 (6th Cir. 1989); *Stevens v. Bordenkircher*, 746 F.2d 342, 347 (6th Cir. 1984)).  Further, defense counsel developed the evidence of the victim's admission that he lied to the police to attack the victim's credibility during his closing argument.  Hence, during the course of the trial the factfinder was  twice made aware of the victim's lie to the police.  The petitioner has failed to demonstrate that counsel's failure to develop this testimony on cross-examination amounts to ineffective assistance of counsel.

Seventh, the petitioner asserts that counsel was ineffective because he attacked the petitioner's credibility during trial. The petitioner alleges that counsel attacked his credibility in open court by openly criticizing the petitioner and arguing with the petitioner during trial. That tactic, the petitioner contends, convinced the trial judge that the petitioner was difficult and uncooperative and, in turn, severely damaged the petitioner's credibility in the eyes of the trial judge. The petitioner's claim focuses on a portion of his direct examination quoted earlier. *See* Trial Tr., Sept. 14, 2004 at 6, 9-10, 13.

The Michigan Court of Appeals found nothing adverse about counsel's line of questioning in the transcript excerpts above:

> In striving to hold defendant to directly responsive answers to his questions, defense counsel was promoting efficiency in the matter of getting defendant's version of the events before the factfinder, which was less likely to put defendant in a poor light than to please the trial court in this bench trial.

*Ward*, 2007 WL 2559541, at *3.

The Michigan Court of Appeals' decision does not unreasonably apply federal law to the facts of this case. Defense counsel's line of questioning does not constitute criticizing or arguing with the petitioner. Counsel was attempting, albeit not in a conciliatory way, to guide the petitioner through his direct examination by eliciting direct responses to his questions. Moreover, as mentioned above, counsel adequately represented the petitioner throughout trial. This is not a case in which counsel repeatedly expressed hostility to the petitioner throughout the trial by conveying to the judge "an unmistakable personal antagonism" toward the petitioner, through attacking the petitioner personally and by repeatedly eliciting information detrimental to the petitioner's interests. *Cf. Rickman v. Bell,* 131 F.3d 1150, 1157-59 (6th Cir. 1997) (finding that a defendant was prejudiced by his counsel's repeated reference to the defendant as "crazy," a "wild man,"and looking

-29-

like he "just got out of somebody's insane asylum").  And because counsel elicited favorable
testimony from the petitioner during direct examination, the petitioner is unable to show that he was
prejudiced by counsel's allegedly disparaging remarks made to the petitioner during the
proceedings.  *See, e.g., Urban v. Ohio Adult Parole Authority*, 116 F. App'x 617, 620-21 (6th Cir.
2004) (defense counsel's alleged conduct of disparaging defendant by asking potential jurors if they
hated doctors because of the way they treat nurses did not prejudice defendant in criminal
proceedings for Medicaid fraud, as element of claim of ineffective assistance of counsel, where
witness nurse testified that she enjoyed working for defendant, they had a professional and friendly
relationship, defendant allowed employees to use his condominium, and that most employees stayed
in his employ for 10 years).  Since the petitioner is unable to establish that counsel was deficient in
this aspect or that counsel's performance prejudiced his defense, the petitioner cannot demonstrate
that he received ineffective assistance of counsel.

It is clear that the petitioner did not receive exemplary assistance from his trial counsel.  The
petitioner may have been better served had counsel investigated his case more thoroughly, made
more of an attempt to contact the petitioner and discuss the case, and more vigorously cross-
examined the complainant.  However, the Sixth Amendment guarantees only adequate assistance
by counsel.  It does not guarantee exemplary, or even good, counsel.  Although counsel's
performance in the petitioner's defense fell short of the ideal in many respects, this Court cannot
conclude that the petitioner has demonstrated that "counsel made errors so serious that counsel was
not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466
U.S. at 687.  The Court must therefore deny the petitioner habeas relief on that grounds.

III.

-30-

For the reasons stated, the Court concludes that the state court decision in this case was not contrary to federal law, an unreasonable application of federal law, or  an unreasonable determination of the facts of the case.  The petitioner has not established that he is presently in custody in violation of the Constitution of the United States.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 30, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

-31-